IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES PIERCE, Reg # 08610-026, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 2:14CV00067-JJV |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Charles Pierce ("Plaintiff") is a federal inmate incarcerated at the Forrest City Low Federal Correctional Institution ("FCI"). He filed this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA") seeking treatment and money damages from the United States ("Defendant") for inadequate dental care. (Doc. No. 1.) Now, the Defendant has filed its second[1] Motion for Summary Judgment (Doc. No. 40) and Plaintiff has responded.

**II.   SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (other

---

[1] On May 8, 2015, I denied Defendant's first Motion for Summary Judgment. (Doc. No. 35.)

1

citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

### III.   ANALYSIS

Defendant's Motion raises only one issue - whether FCI staff's decisions regarding the scheduling of dental care fall within the discretionary function exception to the FTCA.  This exception deprives courts of jurisdiction over claims which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The exception's purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . ." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (citations and quotations omitted).  To determine the applicability of the exemption courts must engage in a two-pronged analysis. First, courts should determine if the conduct challenged involved some element of judgment or choice.  *Id*. at 322.  This prong may be deemed satisfied where no federal statute, regulation, or policy dictates a government employee's actions.  *See, e.g., Demery v. United States DOI*, 357 F.3d 830, 833 (8th Cir.  2004).  The second prong asks whether the choice in question involved considerations of social, economic, or political policy.  *Id*.  In making this determination, it is irrelevant whether the defendant actually consciously weighed policy considerations. *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 801 (8th Cir. 1993).  It is enough that

the judgment or decision is susceptible to such analysis. *Id*.

Defendant argues both prongs are satisfied. First, it contends Bureau of Prisons Policy confers discretion on unit dental staff to determine when and how to provide non-emergent dental care. (Doc. No. 41-1 at 18-20.) Second, it argues scheduling inmates for non-emergent dental care is an administrative question which requires providers to weigh economic, social, and political policies. (Doc. No. 42 at 9.) Notably, Defendant states that dental resources are finite and decisions made to maximize the effect of these resources is the sort of activity which the discretionary function exception was meant to shield. (*Id*.)

For his part, Plaintiff emphasizes the distinction between decisions which are based in policy and those which are purely operational. The former, he argues, implicate the discretionary function exception while the latter do not. (Doc. No. 46 at 2-3.) Plaintiff concedes there is no simple test for distinguishing these decisions. (*Id*. at 3.) Nevertheless, in weighing medical decisions he urges a distinction between decisions on whether to offer treatment, which frequently invoke questions of planning and policy, and decisions on how to treat, which are often purely operational. (*Id*.) Plaintiff also contends that applying the exception to staff's conduct in the instant case would allow them to thwart any claim for failure to offer dental care simply by pointing to the scarcity of resources and arguing the application of those resources was a question of policy. (*Id*. at 2.)

Both parties have offered compelling arguments and this question is a close one. As a general rule, the discretionary function exception does not apply where only a professional, nongovernmental decision is implicated. *See Lather v. Beadle County*, 879 F.2d 365, 368 (8th Cir. 1989). Medical decisions made by government physicians and healthcare providers do not fall within the exception. *Id*. Additionally, no discretion is involved where a duty involves mere "enforcement or administration of a mandatory duty at the operational level, even if professional

3

expert evaluation is required." *Jackson v. Kelly*, 557 F.2d 735, 737-738 (10th Cir. 1977). The relevant inquiry, then, is how to cast the scheduling decisions made by FCI staff in the instant case. As noted above, Defendant points to the scarcity of dental resources at the FCI and the need to balance inmates' dental needs against this limitation. The record, however, indicates the mechanism for scheduling non-emergent dental care was a treatment list. The affidavit of Dr. James T. Owen states, "While emergency care will always be addressed in relation to the emergent care required, routine treatment must be done as inmates matriculate to the top of the [treatment] list." (Doc. No. 41-1 ¶ 16.) Defendant has not provided any specific evidence indicating that policy based considerations formed the order of this list or Plaintiff's place on it.[2] Accordingly, the administration of this list is more akin to the discharge of a mandatory operational duty which the exception was not designed to protect. There is a broader, secondary question inherent in this conclusion, namely whether the implementation of the treatment list was itself the sort of decision which might invoke the discretionary function exception. The answer to this question is likely an affirmative one, but Plaintiff has not specifically challenged the mechanism for assigning treatment in this suit. Moreover, taking such a broad view would, as Plaintiff persuasively argues, preclude every conceivable claim for a delay in medical treatment. A defendant would only have to point to the established system for prioritizing care and argue the decision to implement it was, at the very least, susceptible to governmental policy analysis.

**IV.   CONCLUSION**

   IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment (Doc. No.

---

[2]Defendant does state providers may discontinue non-emergent care if it becomes clear an inmate is not practicing good oral hygiene. (Doc. No. 41-1 ¶ 8.) Nothing before me indicates such a decision is or could be informed by questions of governmental policy, however. To the contrary, whether a patient is practicing proper hygiene would appear to be a purely medical decision.

40) is DENIED.

    IT IS SO ORDERED this 11th day of April, 2016.

                                                  _____

                                                  JOE J. VOLPE
                                                  UNITED STATES MAGISTRATE JUDGE